ALISHA AYRES and
WILLIAM AYRES,

                        Plaintiffs,                    OPINION AND ORDER

        v.
                                                       17-cv-639-wmc

SELENE FINANCE,

                        Defendant.

Early this year, Dane County Circuit Court Judge Remington entered a judgment of foreclosure in favor of the mortgage holder Wilmington Savings Fund, FSB, and against homeowners Alisha and William Ayres, but allowed the Ayres to proceed to a jury trial on their counterclaims against Wilmington, complaining that its mortgage servicer, Selene Finance, violated RESPA and Wisconsin Statute § 224.77, as well as breached the common law duty of good faith and fair dealing arising out of contract. Having prevailed only in part before the jury, who awarded the Ayres $15,000 in damages, they now seek to bring this federal lawsuit against Selene for its conduct as the loan servicer, alleging similar violations of RESPA and Wisconsin Statute § 224.77, as well as intentional interference with contract. Currently before the court is defendant Selene's motion for summary judgment on grounds of issue and claim preclusion. Because plaintiffs are precluded from bringing their claims again for the reasons set forth below, the court will grant defendant Selene's motion for summary judgment.

**A. Background**

The Ayres originally executed a home mortgage and note in favor of North American Savings Bank, F.S.B., on September 15, 2006. Within three years of executing the mortgage, however, they experienced financial difficulties, prompting them to seek a reduction in the monthly payments. The Ayres completed a trial period payment plan before entering into a permanent loan modification agreement with Wells Fargo, who by then had acquired the mortgage and note from North American Savings Bank. This modification agreement was effective as of September 8, 2010, and required new, monthly payments of $941.24.

Shortly after executing the 2010 loan modification agreement, the Ayres sought bankruptcy protection in the Western District of Wisconsin Bankruptcy Court. Following their discharge from bankruptcy, the Ayres sought another loan modification through Wells Fargo, who continued to hold the note and service the mortgage loan. After Wells Fargo transferred the mortgage and note to Wilmington on February 19, 2016, the Ayres began submitting documents to Wilmington in connection with a request to modify their loan, although Wells Fargo continued to service the loan until April 19, 2016, when Selene took over as the loan servicer. Between May and late July 2016, the Ayres and Selene continued to communicate about information and documents required for Selene and Wilmington to process their application for a loan modification.

---

[1] Viewing the facts in the light most favorable to plaintiffs as the non-moving party, the following facts are material and undisputed for purposes of summary judgment, except where noted below.

By June 29, 2016, the Ayres' loan modification application was complete. In late July, Selene provided the Ayres with a "Loss Mitigation Notice of Determination," which Selene resent in early August. (July 28, 2016 Letter (dkt. #44-3) 2-3; Aug. 1, 2016 Letter (dkt. #44-4) 2-3.) In these communications, Selene informed the Ayres that they had been approved for a standard modification, but declined for two HAMP Modifications. (July 28, 2016 Letter (dkt. #44-3) 2-3; Aug. 1, 2016 Letter (dkt. #44-4) 2-3.) Both letters informed the Ayres of their right to appeal and provided appeal forms to complete. (July 28, 2016 Letter (dkt. #44-3) 5; Aug. 1, 2016 Letter (dkt. #44-4) 5.)

On August 1, 2016, Selene offered the Ayres a specific, trial modification plan.[2] However, the Ayres considered the proposed trial payment amount "unacceptable," and they rejected that proposal by filing an appeal and not making the proposed trial payments.[3] On December 21, 2016, the Ayres applied for and were offered yet another modified, trial payment plan, which they also rejected because (1) the Ayres considered the payment amount "unacceptable" and (2) Selene could not specify the exact amount for the permanent modified monthly payment. As to the latter concern, Selene had on multiple occasions informed the Ayres that the amount of the final modified mortgage payment would remain the same, but it could not calculate that amount until Selene completed the final escrow analysis at the time of the permanent loan modification.

---

[2] While the parties agree that this date was "[o]n or about August 1, 2018" (Def.'s Reply to Pls.' Resp. to Def.'s PFOF (dkt. #42) ¶ 14), the court understands that the actual date was August 1, 2016. (*See also* State Ct. Def.'s PFOF (dkt. #28-1) ¶ 31.)

[3] Defendant contends that "Alisha Ayres pulled the appeal form from the Notice of Determination, attached it to the Trial Plan Offer (which did not include an appeal form) and faxed the documents to Selene." (Def.'s Resp. to Pls.' Add'l PFOF (dkt. #43) ¶¶ 16, 17.)

**B. State Court Proceedings**

On October 26, 2016, during the Ayres' and Selene's exchange of first and second proposed trial modification plans, Wilmington also filed suit in the Dane County Circuit Court seeking to foreclose on the Ayres' mortgage as the note and mortgage holder. (*See* State Ct. Docket Sheet (dkt. #28-3) 10.) In addition to answering that complaint, the Ayres alleged three counterclaims against Wilmington: (1) violation of RESPA; (2) breach of the implied duty of good faith and fair dealing in the mortgage loan contract; and (3) violation of Wis. Stats. § 224.77. (State Ct. Answer (dkt. #28-4) 7-9.) Dane County Circuit Court Judge Remington conducted a jury trial on the counterclaims on January 8-10, 2018. During that trial -- but outside the presence of the jury -- Judge Remington also accepted evidence in a trial to the bench on Wilmington's foreclosure claim, including the amounts due on the loan, the Ayres' payment history, and their default. On January 10, Judge Remington issued an oral ruling granting judgment of foreclosure in favor of Wilmington. This ruling was followed by a written order for judgment on January 25, 2018, and entry of a judgment of foreclosure on January 29.

During the trial on the Ayres' counterclaims, the jury heard evidence from, among others, a contested default case manager for Selene Finance, Peter Joslyn, who testified "as a representative of Wilmington." (State Ct. Trial Tr. (dkt. #44-5) 171:4-7, 172:1-3.) Joslyn explained that as the loan servicer, Selene maintained all records on behalf of Wilmington, including written and oral communications with borrowers and loan payment records. (*Id.* at 173:1-13.) Selene also accepts and evaluates loan modification applications. (*Id.* at 173:17-19.) When a borrower is offered a loan modification, the

noteholder determines when the first payment is due. (*Id.* at 235:5-13.)[4]

As part of its special verdict, the jury ultimately found that Wilmington "fail[ed] to exercise reasonable diligence in obtaining documents and information from the Ayres to complete their application for loan modification in and after February, 2016" and that $15,000 would compensate the Ayres for this violation. (State Ct. Special Verdict (dkt. #28-5) 1-2.) As for the other RESPA claims, the jury concluded that Wilmington did not fail to: (1) "provide prompt notice to the Ayres that their application was incomplete"; (2) "review the Ayres' application and notify them of any loss mitigation option they would be offered" within 30 days of the application's completion; or (3) "process the Ayres' appeal according to the applicable provisions of RESPA." (*Id.* at 1.) The state court further declined the Ayres' motion to reverse the jury's verdict regarding Wilmington's processing of their appeal from the trial modification plan under RESPA.

As for the Ayres' counterclaim that Wilmington had breached its duty of good faith and fair dealing, Judge Remington hesitated even including a verdict question but ultimately did so, and the jury found that Wilmington "breach[ed] its duty . . . with respect to the Ayres" and awarded them additional compensation of $75,000. (State Ct. Special

---

[4] In their summary judgment submissions, plaintiffs propose a number of facts concerning: (1) Joslyn's use of handwritten notes to refresh his recollection; (2) state court disputes regarding the Ayres' counsel's access to documents; and (3) evidentiary rulings by the state court. (Def.'s Resp. to Pls.' Add'l PFOF (dkt. #43) ¶¶ 26-37, 43-44.) Defendant contends that questions about business records are currently the subject of an appeal to the Wisconsin Court of Appeals, adding that plaintiffs "never asked Wilmington or Selene for any documents" before the start of trial. (*Id.* at ¶¶ 28, 32, 37, 38.) Regardless, those issues are for the state courts to resolve; this court's job does not entail reviewing the substantive decisions of state courts, but rather to consider the preclusive effect of their final rulings, if any. *Cf. Brown v. Bowman*, 668 F.3d 437, 442 (7th Cir. 2012) (explaining that *Rooker-Feldman* provides that "no matter how erroneous or unconstitutional the state court judgment may be, only the Supreme Court of the United States has jurisdiction to review it" (citation omitted)). Accordingly, if there was a legal or factual mistake made before the state trial court, that is for the Wisconsin Court of Appeals to determine.

Verdict (dkt. #28-5) 2.)  However, Wilmington moved for -- and the state circuit court granted -- judgment notwithstanding the verdict.  In granting the motion, Judge Remington explained that the Ayres' claim was not cognizable under state law *and* the evidence did not support the verdict or the damages award.  The circuit court also denied the Ayres' post-trial request to stay the foreclosure judgment and sheriff's sale, entering final judgment on the foreclosure on January 29 and on their counterclaims on March 13, 2018.  The Ayres appealed and that appeal is still pending.[5]

On April 27, 2018, Selene paid the Ayres $50,368.97 ($15,000 damages award, $35,000 in attorneys' fees, and post-judgment interest) as satisfaction for the state-court judgment.  (State Ct. Satisfaction of J. (dkt. #28-9) 1.)  While plaintiffs contend that "[t]here is no evidence as to who tendered the payment" that simply is not the case.  (*See* Selene Check (dkt. #44-1) 1.)

## C.  Similarity of Proceedings

This case was filed on August 16, 2017, while the state-court proceedings were ongoing.[6]  According to defendant, the claims and factual allegations in this case "are virtually identical to [plaintiffs'] claims in the State Court Action," while plaintiffs dispute that characterization.  (Def.'s Reply to Pls.' Resp. to Def.'s PFOF (dkt. #42) ¶ 37.)  In responding to defendant's proposed findings of fact, plaintiffs attempt to distinguish

---

[5] The state-court appeal was submitted on the briefs to the Wisconsin Court of Appeals on December 7, 2018.  Unsurprisingly, the arguments made by the Ayres on appeal mirror some of their procedural and evidentiary complaints here.

[6] Originally, plaintiff brought suit against Selene and Wells Fargo Bank, N.A.  Wells Fargo has since been dismissed under Rule 15(a).  (*See* Oct. 18, 2018 Order (dkt. #34).)

between the claims and allegations they made against Wilmington in the state court action and those raised against Selene here, but they acknowledge that in the state court proceedings their counsel informed the jury at least nine times about how "Selene *is* Wilmington" or that "Wilmington acted through Selene." (Def.'s Reply to Pls.' Resp. to Def.'s PFOF (dkt. #42) ¶ 44 (quoting examples).)[7]

In her deposition, Alisha Ayres agreed that Selene's conduct complained about here was "the same conduct that [she] testified about in the state court action." (Alisha Ayres Dep. (dkt. #29) 135:6-11; *see also id.* at 133:1-9, 134:20-135:2.) Likewise, William Ayres answered "I don't believe so" when asked "To the extent that Alisha testified here today that Selene's conduct underlying this action is the same conduct complained of in the state court action with respect to Selene do you have any reason to disagree with her?" (William Ayres Dep. (dkt. #28-14) 37:8-15.) Likewise, Alisha Ayres acknowledges that she "never had direct contact with Wilmington concerning the loan modification." (Alisha Ayres Dep. (dkt. #29) 126:25-127:4.)

OPINION

Summary judgment is appropriate if the moving party establishes that: (1) "there is no genuine dispute as to any material fact"; and (2) it "is entitled to judgment as a matter

---

[7] In fairness, plaintiffs' attorney also referred to Wilmington on occasion as the party to be held liable. (Def.'s Resp. to Pls.' Add'l PFOF (dkt. #43) ¶ 23.) Defendant rightly counters, however, that "a deliberate mischaracterization of the State Court proceedings" and worse, "in several cases, information contrary to [statements relied upon by plaintiffs in their] proposed finding of fact is replaced by ellipses." (Def.'s Resp. to Pls.' Add'l PFOF (dkt. #43) ¶ 23.) Defendant points to three such examples. (*Id.* (identifying subparagraphs a, b, and d).) While some of plaintiffs' examples *do* focus on Wilmington (*e.g.*, State Court Trial Tr. (dkt. #28-11) 34:19-20), others *are* selectively quoted to omit references to Selene (*e.g.*, *id.* at 25:25-26:3).

of law." Fed. R. Civ. P. 56(a). In considering defendant's motion, "[t]he evidence of [plaintiffs as] the non-movant is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## I. Claim Preclusion

Federal courts give state court judgments "the same preclusive effect [they] would receive under state law." *Wilhelm v. County of Milwaukee*, 325 F.3d 843, 846 (7th Cir. 2003) (citing *Allen v. McCurry*, 449 U.S. 90 (1980)); 28 U.S.C. § 1738. Under Wisconsin law, claim preclusion provides that "a final judgment is conclusive in all subsequent actions between the same parties [or their privies] as to all matters which were litigated or which might have been litigated in the former proceedings." *Pasko v. City of Milwaukee*, 2002 WI 33, ¶ 14, 252 Wis.2d 1, 14, 643 N.W.2d 72, 78 (2002) (alteration in original) (quoting *DePratt v. West Bend Mut. Ins. Co.*, 113 Wis.2d 306, 310, 334 N.W.2d 883 (1983)).[8] Three elements determine if claim preclusion applies: "(1) an identity between the parties or their privies in the prior and present suits; (2) an identity between the causes of action in the two suits; and (3) a final judgment on the merits in a court of competent jurisdiction." *Id.* (quoting *Northern States Power*, 189 Wis.2d at 551). The court also considers whether it would be fair to apply claim preclusion. *Pasko*, 2002 WI 33, ¶ 22 (internal citations omitted). The party seeking application of claim preclusion has the burden of establishing its applicability. *Id.* at ¶ 16 (citing *Alexopoulos v. Dakouras*, 48 Wis.2d 32, 37, 179 N.W.2d

---

[8] Although the earlier nomenclature is stubborn among even Wisconsin courts, the Wisconsin Supreme Court has formally replaced the terms "res judicata" and "collateral estoppel" with "claim preclusion" and "issue preclusion," respectively. *Northern States Power v. Bugher*, 189 Wis. 2d 541, 550, 525 N.W.2d 723, 727 (1995). This court will follow suit.

836 (1970)).  Here, defendant has met its burden.

## A.  Privity

Plaintiffs first contend that Selene has not established that it was in privity with Wilmington in the state court action (Pls.' Opp'n (dkt #35) 5-9), but that is contradicted by the record.  Privity examines whether the interests of a party to the first lawsuit align with the interests of a nonparty, so that the nonparty's interests were adequately represented in the first action.  *Pasko*, 2002 WI 33, at ¶ 18.[9]  For a nonparty to be in privity with a party to suit, they "must have such absolute identity of interests that the party to the earlier action represented the same legal interest as the non-party to that first action." *Id.* at ¶ 18 (internal citations omitted).  When an entity "is so identified in interest with a party to former litigation that [it] represents precisely the same legal right in respect to the subject matter involved," then privity exists.  *Id.* at ¶ 16 (citing *Hart Steel Co. v. Railroad Supply Co.*, 244 U.S. 294, 298 (1917)).

Here, Wilmington's interests in the state court action aligned perfectly with Selene's interests.  Indeed, in the state court action, the Ayres' counterclaims all concerned complaints about how Wilmington handled their request for a loan modification, and as a result, all of the complaints arose out of the *actions of Selene* as the loan service provider standing in Wilmington's shoes, so much so that a Selene representative had to appear *for* the counterclaim defendant Wilmington to explain its conduct at trial.  As Alisha Ayres testified, Selene's conduct complained about in this lawsuit was "the same conduct that

---

[9] In *Pasko*, the Wisconsin Supreme Court concluded that there was no privity because the interests of the officer-plaintiffs from the first suit and the interests of the police-association-plaintiff in the second were different.  2002 WI 33, ¶¶ 20-21.

[she] testified about in the state court action"; she even acknowledges never having "direct contact with Wilmington concerning the loan modification." (Alisha Ayres Dep. (dkt. #29) 126:25-127:4, 135:6-11; *see also id.* at 133:1-9, 134:20-135:2.) Likewise, plaintiffs' counsel repeatedly informed the state court jury that *Selene's* actions gave rise to Wilmington's liability under RESPA and Wisconsin statutory and common law. (*See e.g.*, State Ct. Trial Tr. (dkt. #28-11) 25:25-26:3 ("For your purposes and for the purposes of the law, Selene is Wilmington. But internally, Selene is not Wilmington. Wilmington is the boss."); *id.* at 27:8-9 ("But what's important for you, the jurors, is Selene Finance, and because Selene Finance is Wilmington . . . ."); *id.* at 44:8-14 ("Now RESPA requires that . . . the servicers exercise reasonable diligence in obtaining documents and information. . . . . That's up to you to decide was Selene reasonably diligent."); *id.* at 45:4-9 ("Now remember, Selene Finance is just the person Wilmington brought in. . . . They act through their servicers[.]").) Accordingly, the state court jury could *only* find Wilmington liable for the Ayres' counterclaims based on Selene's conduct.

As a result, Wilmington had an equal incentive to defend as Selene does here. This alignment in interest prompted the Seventh Circuit to observe in *Berry v. Wells Fargo Bank, N.A.*, 865 F.3d 880 (7th Cir. 2017), that "[t]ypically, a mortgage servicer acts as the agent of the mortgagee to effect collection of payments on the mortgage loan. Thus, it will be a rare case in which those two parties are not perfectly identical with respect to successive suits arising out of a single mortgage transaction." *Id.* at 883 (quoting *R.G. Financial Corp. v. Vergara-Nuñez*, 446 F.3d 178, 187 (1st Cir. 2006)) (finding privity between mortgage servicer and mortgage holder where plaintiff articulated no reason to deviate from this general rule). Given this absolute identity of interests in the state court action, Wilmington

and Selene were in privity with each other, and this element of claim preclusion is easily met here.

## B. Cause of Action

To determine if two suits involve the same cause of action, Wisconsin has adopted the transactional approach. *Northern States Power*, 189 Wis.2d at 553 (citing *DePratt*, 113 Wis.2d at 311-12). This "requires 'the presentation in the action of all material relevant to the transaction without artificial confinement to any substantive theory or kind of relief.'" *Id.* at 555 (quoting *DePratt*, 113 Wis.2d at 311-12). Said another way, how many possible theories are available to the plaintiff does not matter: "if they all arise from the same factual underpinnings they must all be brought in the same action or be barred from future consideration." *Id.* The court examines the factual terms of a claim. *Great Lakes Trucking Co. v. Black*, 165 Wis.2d 162, 169, 477 N.W.2d 65, 68 (Ct. App. 1991). Accordingly, "if both suits arise from the same transaction, incident or factual situation, [claim preclusion] generally will bar the second suit." *Northern States Power*, 189 Wis.2d at 555 (alteration in original) (quoting *Pliska v. City of Stevens Point, Wis.*, 823 F.2d 1168, 1172 (7th Cir. 1987)).

Here, there can be no dispute that plaintiffs' claims arise from the exact same set of facts considered by the state jury in reviewing plaintiffs' counterclaims. As discussed above, plaintiffs' claims are premised on actions of *Selene* as mortgage servicer, just as the state court counterclaims against Wilmington under RESPA were premised on those same actions. *Cf. Great Lakes Trucking*, 165 Wis.2d at 172 (explaining that because any possible liability of the defendant in the first action came from the other defendant in the second

action, the plaintiff "had a full and fair opportunity to raise and have determined the claims against" the second defendant) (finding "identity of parties and causes of action" to estop plaintiff from proceeding). Further, plaintiffs' suit is an obvious attempt to get a second bite at the apple: they were only successful on one of their claims in the state court action; now they hope to bring all of those same claims again. Indeed, if they were to prevail here on the three, already-rejected RESPA claim violations, that would be diametrically opposed to the state court jury's determination of no liability and effectively "nullify" the state court judgment. Identity of causes of action is fully satisfied under the transactional approach.

Even looking beyond the transactional approach to the causes of action, the legal and factual overlap is stark. Count I of both the complaint and the state-court counterclaim allege a RESPA violation in the handling of the Ayres' application for loan modification:

| Complaint | State Court Counterclaim |
|---|---|
| "In and after February 2016, defendants failed to exercise reasonable diligence in the handling of loan modification applications submitted by the [Ayres]."[10] (Compl. (dkt. #1) ¶ 49.) | "In and after February 2016, plaintiff failed to exercise reasonable diligence in the handling of loan modification applications submitted by the defendants." (State Ct. Countercl. (dkt. #28-4) ¶ 47.) |
| "In and after February 2016 defendants failed to promptly review the Ayres' loan modification applications, failed to notify them of the completed application in the time limits required by law, and failed to properly evaluate those applications." (*Id.* ¶ 50.) | "Plaintiff in and after February 2016 failed to promptly review the Ayres' loan modification application, failed to notify them of the completed application in the time limits required by law, and failed to properly evaluate those applications." (*Id.* at ¶ 48.) |

---

[10] The complaint concludes the allegation with "the defendants," suggesting that the allegation was directly copied from the state court counterclaim.

Count II of the complaint here alleges a claim for intentional interference with contract against Selene (and since-dismissed defendant Wells Fargo), while Count II of the state court counterclaim alleged a breach of contract against Wilmington. Count III of both documents allege violations of Wisconsin Statute § 244.77:

| Complaint | State Court Counterclaim |
|---|---|
| "Defendants' actions as alleged herein violate section 224.77 as follows:<br>* * *<br>c. Selene Finance's failure to act with reasonable diligence in handling the May 2016 loan modification violates section 224.77(l)(i), Wis. Stats.<br>d. Both defendants' failure to act with reasonable diligence in handling the modifications, failure to comply with federal time limits on responding to modifications, and failure to prepare and follow the stipulation to resolve the 2015 motion for relief form stay violate sections 224.77(l)(k) and (L), Wis. Stats."<br><br>(Compl. (dkt. #1) ¶ 58.) | "Plaintiffs' actions as alleged herein violate section 224.77 as follows:<br>* * *<br>b. Plaintiff's failure to prepare and file a stipulation to resolve the motion for relief from stay, failure to prepare and file the February 2016 streamline modification, and failure to act with reasonable diligence in handling the May 2016 loan modification violate section 224.77(l)(i), Wis. Stats.<br>c. Plaintiff's failure to act with reasonable diligence in handling the modifications, failure to comply with federal time limits on responding to modifications, and failure to prepare and follow the stipulation to resolve the 2015 motion for relief from stay violate sections 224.77(l)(k) and (L), Wis. Stats."<br><br>(State Ct. Countercl. (dkt. #28-4) ¶ 55.) |

Accordingly, the identity of the cause of action as an element of claim preclusion is met even under a non-transactional approach.

## C. Final Judgment

Nor can there be a dispute that the state court action resulted in a final judgment. (*See* State Ct. Special Verdict (dkt. #28-5) 1-2; St. Ct. J. (dkt. #28-12) 1; State Ct. Satisfaction of J. (dkt. #28-9) 1.) Likewise, there can be no dispute that the judgment was

issued by a court of competent jurisdiction.

While plaintiffs contend that the state court judge "was unfamiliar with RESPA and also unfamiliar with some of the rules of evidence on which the Ayres relied to help litigate their case" (Pls.' Opp'n (dkt. #35) 17), that does not impugn the state court's jurisdiction. State courts are courts of general jurisdiction. *See Wilhelm v. County of Milwaukee*, 325 F.3d 843, 847 (7th Cir. 2003) ("As the Court said in *Nevada v. Hicks*, 533 U.S. 353, 366, 121 S. Ct. 2304, 150 L.Ed.2d 398 (2001), 'state courts of "'general jurisdiction'" can adjudicate cases invoking federal statutes . . . absent congressional specification to the contrary.'"); *see also Berry*, 865 F.3d at 883 ("[I]f [plaintiff] was dissatisfied with the state court's decision or justifications, his remedy was to appeal, not to start over with a new suit."). And, again, it was the plaintiffs who chose to pursue their RESPA claims in state court. Accordingly, this element is also met.

### D. Fairness

Finally, the court considers the fairness of applying claim preclusion. *Pasko*, 2002 WI 33, ¶ 22 (internal citations omitted). Accordingly, "claim preclusion should be applied so as not to deprive a party of a full and fair determination of an issue." *Id.* (internal citation omitted). As will be further elaborated in the discussion of issue preclusion, there is nothing unfair about applying claim preclusion here. Plaintiffs already had their day in state court, and they were partially successful to boot. As a result, plaintiffs were not only given a full and fair hearing, but they have been fully compensated for Selene's actions. (*See* State Ct. Special Verdict (dkt. #28-5) 1-2; State Ct. Satisfaction of J. (dkt. #28-9) 1); Selene Check (dkt. #44-1) 1.)

## II. Issue Preclusion

Even if claim preclusion were not applicable here, at some point litigation over a specific controversy must end. *Masko v. City of Madison*, 2003 WI App 124, ¶ 4, 263 Wis.2d 442, 447, 665 N.W.2d 391, 394 (citing *Lindas v. Cady*, 175 Wis.2d 270, 279, 499 N.W.2d 692 (Ct. App. 1993), *aff'd as modified by* 183 Wis.2d 547, 515 N.W.2d 458 (1994)). "Issue preclusion refers to the effect of a judgment in foreclosing relitigation in a subsequent action of an issue of law or fact that has already been litigated and decided in a prior action." *Northern States Power*, 189 Wis.2d at 550 (internal citation omitted). Application of the doctrine of issue preclusion requires that: (a) the issue was "actually litigated" in the earlier action; and (b) applying issue preclusion is fair.[11] *Masko*, 2003 WI App 124, at ¶ 4 (citing *Jensen v. Milwaukee Mut. Ins. Co.*, 204 Wis.2d 231, 237, 554 N.W.2d 232 (Ct. App. 1996)). As with claim preclusion, the party seeking to apply issue preclusion bears the burden of establishing its appropriateness. *Id.* at ¶ 4 (citing *State ex rel. Flowers v. H & SS Dept.*, 81 Wis.2d 376, 389, 260 N.W.2d 727 (1978)).

---

[11] When using issue preclusion against a *nonparty* to the prior action, privity or "sufficient identity of interest with the party to the prior proceeding" must first be found. *Masko*, 2003 WI App 124, at ¶ 5 (citing *Paige K.B. v. Steven G.B.*, 226 Wis.2d 210, 594 N.W.2d 370 (1999); *but see In re Paternity of Amber J.F.*, 205 Wis.2d 510, 518, 557 N.W.2d 84, 87 (Ct. App. 1996) (noting that "recent decisions have discarded the mutuality requirement and adopted a more flexible approach based on a 'fundamental fairness' analysis. . . . Therefore, unlike claim preclusion, issue preclusion does not require an identity of parties."). Here, however, defendant seeks to apply the doctrine defensively to preclude a party to the prior lawsuit from relitigating legal and factual issues already resolved in a prior state court action. *See Crowall v. Heritage Mut. Ins. Co.*, 118 Wis.2d 120, 125, 346 N.W.2d 327, 330 (Ct. App. 1984) (holding that "the lack of mutuality of estoppel does not preclude the use of collateral estoppel when it is asserted defensively to prevent a party from relitigating an issue which has been conclusively resolved against that party in a prior case"). As established above, defendant Selene is in privity with state-court defendant Wilmington, so the court will not dwell on this point.

## A. Actually Litigated

Before issue preclusion can apply, "one must have had a fair opportunity procedurally, substantively and evidentially to litigate the issue." *Masko*, 2003 WI App 124, at ¶ 15 (quoting *Dane Cnty. v. Dane Cnty. Union Local 65*, 210 Wis.2d 267, 278, 565 N.W.2d 540 (Ct. App. 1996)). The issue must have been "necessary to the outcome of the first action," and the party must have been motivated to prevail. *In re Paternity of Amber J.F.*, 205 Wis.2d at 517 (citing *Northern States Power*, 189 Wis.2d at 550).[12] As noted above, the success or failure of plaintiffs' state court counterclaims against Wilmington relied entirely on the actions of Selene, with those same actions forming the basis of their claims in this suit, and plaintiffs had equal motivation to prevail, if not an even greater motivation since they were seeking to further forestall, if not prevent, foreclosure of their home.

To be fair, the second cause of action alleged here an intentional interference with contract, while the second counterclaim alleged a breach of contract. However, these differences are overwhelmed by the factual and legal similarities between the claims. (*Compare* Compl. (dkt. #1) ¶¶ 49-50 (alleging claim for RESPA violation based on a failure to "exercise reasonable diligence in handling of loan modification applications") *with* State Ct. Answer (dkt. #28-4) ¶¶ 47-49 (same); *compare* Compl. (dkt. #1) ¶¶ 53-56 (alleging claim for intentional interference with contract based on failures "interfer[ing] with the

---

[12] The Wisconsin Court of Appeals concluded that issue preclusion did not prevent Amber from seeking to establish her paternity after her mother had failed to do the same. She was not a party to her mother's lawsuit and thus she could not have obtained review of that judgment; state law changed between suits, creating a rebuttable presumption of paternity; and due process concerns also weighed in favor of permitting her to proceed. 205 Wis.2d at 520-22.

Ayres' ability to comply with [three] contracts": "the original note, the agreement to resolve the second motion for relief from stay, and the February 2016 approved 'streamline modification'") *with* State Ct. Answer (dkt. #28-4) ¶¶ 51-53 (alleging claim for breach of contract caused by "fail[ure] to act in good faith, . . . to draft, file and comply with the agreement to resolve the motion for relief from stay, and . . . to honor the February 2016 streamline modification"); *compare* Compl. (dkt. #1) ¶¶ 58-59 (alleging violation of Wis. Stats. § 224.77 based on: (1) "a false, deceptive and misleading promise that influenced the Ayres to their detriment"; (2) "failure to prepare and file" the February 2016 streamline modification and a stipulation to resolve the motion; (3) failure to honor the streamline modification; and "failure to act with reasonable diligence in handling the modifications, failure to comply with federal time limits on responding to modifications, and failure to prepare and follow the stipulation to resolve the 2015 motion for relief from stay") *with* State Ct. Answer (dkt. #28-4) ¶¶ 55-56 (same); *see also* Compl. (dkt. #1) ¶¶ 6-47; State Ct. Answer (dkt. #28-4) ¶¶ 2-3, 5-43 (alleging same facts).)

Even if these substantial similarities were not enough, the ultimate outcome of the state lawsuit would be.[13]  Indeed, in motions after verdict, the state court judge found *no* breach of contract, effectively barring plaintiffs from now claiming that Selene induced a breach!  As a result, plaintiffs already had their day in court and the jury awarded them a partial victory and that judgment has already been satisfied.  (Selene Check (dkt. #44-1) 1; State Ct. Satisfaction of J. (dkt. #28-9) 1.)

---

[13] In the unlikely event that plaintiffs were to prevail on appeal from the circuit court's ruling of no breach of contract, they could seek a reopening of the availability of tortious interference, although plaintiffs' claim against Selene for its conduct as a mortgage servicer may collapse by virtue of Selene's standing in Wilmington's shoes or be otherwise privileged.

## B. Fundamental Fairness

A court considering whether to apply issue preclusion considers five factors:

> (1) could the party against whom preclusion is sought, as matter of law, have obtained review of the judgment; (2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law; (3) do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue; (4) have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; or (5) are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action?

*Masko*, 2003 WI App 124 at ¶ 6 (quoting *Michelle T. v. Crozier*, 173 Wis.2d 681, 688-89, 495 N.W.2d 327 (1993)).

All of these factors also weigh in favor of applying issue preclusion here. First, the plaintiffs had every right to appeal the judgment in the state court action, and, in fact, did so. (Not. of Appeal (dkt. #23-8) 1 (identifying judgments from January 29 and March 13, 2018 as those subject to the appeal).) Second, there was no shift in the law, nor are plaintiffs' claims "distinct" from the counterclaims they raised in the state court action. Rather, as just discussed, the earlier counterclaims and the claims asserted here are legally and factually practically the same. Third, there are *no* significant differences in the proceedings between the state and federal courts, particularly given the low threshold established under Wisconsin law. *See Masko*, 2003 WI App 124, at ¶¶ 10-12 (concluding differences between circuit court and municipal court -- including both the lack of counsel *and* lack of a jury in the municipal proceeding -- were *insufficient* to require relitigation in

circuit court).[14]  Fourth, the Ayres faced the same burden of proving their counterclaims in the state court as they do proving those same claims here.  Finally, no special circumstances or public policy would make issue preclusion unfair here.

At most, plaintiffs advance the confusing and meritless argument that if issue preclusion applies, then "Selene, like Wilmington, must be found to have violated RESPA," and because "the Ayres cannot collect more than one set of damages, adopting Selene's issue preclusion argument would require this Court to find that Selene is liable for at least one violation of RESPA, setting the matter for a trial on damages."  (Pls.' Opp'n (dkt. #35) 16.)  As an initial matter, the argument turns the very purpose of claim and issue preclusion on its head by essentially arguing these doctrines could not possibly preclude a party from relitigating claims over again.  Further, plaintiffs concede they "cannot collect more than one set of damages," (*id.*), which they already have (*see* Selene Check (dkt. #44-1) 1; State Ct. Satisfaction of J. (dkt. #28-9) 1).  Accordingly, both claim and issue preclusion apply, since to hold otherwise would not just result in the possibility of inconsistent jury verdicts on the same legal and factual issues *and* fail to defer to final resolution of the state courts, but would allow plaintiffs to recover twice for the same injury.[15]

## III. Right to Federal Forum

Finally, notwithstanding this seemingly straightforward result under Wisconsin's claim and issue preclusion laws, and the Full Faith and Credit Clause of the United States

---

[14] Plaintiffs complain about the state court's denial of their request to review certain documents, but that concern is currently subject to the state court appeal, not evidence of fundamental unfairness.

[15] If anything, plaintiffs' argument identifies a possible issue of allocation of responsibility for plaintiffs' damages between Wilmington and Selene, not a basis for double recovery by plaintiffs.

Constitution, plaintiffs essentially argue that they should not "be forced, *by Wilmington*, to litigate *their claims against Selene*, in state court" because "Wisconsin does not have a compulsory counterclaim rule." (Pls.' Opp'n (dkt. #35) 11-12 (emphasis in original).) Rather, the counterclaims are only compulsory "if the judgment in the second action would nullify the judgment or impair rights established in the first action." (*Id.*) Even though plaintiffs are correct regarding the common-law compulsory counterclaim rule, that does not get them very far under Wisconsin law:

> The common-law compulsory counterclaim rule is a narrow exception to the general rule of permissive counterclaims. It operates to protect the integrity of judgments from collateral attack by precluding a defendant in the first action from commencing a second action that will nullify the first judgment or impair rights established in the first action.

*Wickenhauser v. Lehtinen*, 2007 WI 82, ¶ 26, 302 Wis.2d 41, 60, 734 N.W.2d 855, 865 (citing Kevin M. Clermont, *Common-Law Compulsory Counterclaim Rule: Creating Effective and Elegant Res Judicata Doctrine*, 79 Notre Dame L. Rev. 1745 (2004)).[16]

The compulsory counterclaim rule applies where all elements of claim preclusion are met and a successful second suit would either impair rights established in the first action or nullify the first action's judgment. *Id.* at ¶ 27. But, here, just as Judge Remington found in state circuit court, his entry of a judgment of foreclosure did not impair or nullify claims against Wilmington in the servicing of the loans. For that reason, the outcome here

---

[16] While the Wisconsin Supreme Court concluded in *Wickenhauser* that the three elements of claim preclusion were present, the compulsory counterclaim rule did not bar the second suit because the "second action does not nullify the first judgment or impair any rights established in that action. In the first action, the Wickenhausers were successful in their affirmative defense based on fraud. This action for damages is based on the same fraud that was proven in the first action." 2007 WI 82, ¶¶ 31, 38.

does not broadly "require a person being sued not only to assert certain counterclaims against the plaintiff, but also to assert related claims against any nonparty who is in privity with the plaintiff." *Sheth v. Premierbank*, No. 15-cv-315-bbc, 2016 WL 4523937, at *10 (W.D. Wis. Aug. 22, 2016). Rather, the counterclaims plaintiffs brought in the state court action and the claims asserted here are practically the same. Having chosen to assert those counterclaims, rather than simply asserting affirmative defenses, plaintiffs chose the state court as the forum to litigate their claims.

## ORDER

IT IS ORDERED that:

1) Defendant's motion for summary judgment (dkt. #25) is GRANTED.

2) The clerk of court is directed to ENTER judgment and CLOSE this case.

Entered this 17th day of December, 2018.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge